UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN BEAR,

    *Plaintiff*,

v.                                CASE NO. 12-CV-14996

COMMISSIONER OF              DISTRICT JUDGE TERRENCE G. BERG
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 13.)

Plaintiff Ryan Bear was 36 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 35.) Plaintiff's employment history includes work as an assembler for a major automobile manufacturer for 11 years. (Tr. at 128.) Plaintiff filed the instant claim on December 11, 2009, alleging that he became unable to work on December 23, 2008. (Tr. at 105.) The claim was denied at the initial administrative stage. (Tr. at 51.) In denying Plaintiff's claim, the Commissioner considered carpal tunnel syndrome and inflammatory arthritis as possible bases for disability. (*Id.*) On April 20, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Earl Witten, who considered the application for benefits *de novo*. (Tr. at 17-30, 31-50.) In a decision dated May 4, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 27.) Plaintiff requested a review of this decision on July 1, 2011. (Tr. at 15-16.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 13, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On November 12, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137,

142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Judicial review of the ALJ's decision is direct, "but we play an 'extremely limited' role." *Simila v. Astrue,* 573 F.3d 503, 513-14 (7th Cir. 2009). "We do not actually review whether [the claimant] is disabled, but whether the Secretary's finding of not disabled is supported by substantial evidence." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993). Just as "'[n]o trial is perfect,' . . . no administrative hearing or opinion is either[;] thus, in analyzing an ALJ's decision, a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of essentially meaningless missteps." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

5

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

6

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2011, and that Plaintiff had not engaged in substantial gainful activity since December 23, 2008, the alleged onset date. (Tr. at 22.) At step two, the ALJ found that Plaintiff's carpal tunnel syndrome (CTS), status post right carpal tunnel release, right shoulder impingement, rheumatoid arthritis and irritable bowel syndrome were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 22-23.) At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. at 25.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 23-25.) The ALJ also found that Plaintiff was a younger individual (i.e., between the ages of 18 and 49) on the alleged disability onset date. (Tr. at 25.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 26-27.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff underwent carpal tunnel release surgery for his right side with Dean Schueller, M.D.. On May 14, 2008, Plaintiff reported "improved strength in his right hand" and Dr. Schueller noted that his "scar is well healed on the right wrist and he has excellent pinch strength, no muscle wasting, and normal sensation." (Tr. at 160.) Dr. Schueller "stressed the importance of proper posture and continued daily maintenance for his shoulders" and stated that "[a]s far as his hands

7

are concerned, we will return him back to work with minimum repetitive use" and "will also try to minimize his overhead work for his shoulders as well, otherwise, no restrictions." (*Id.*)

Plaintiff participated in physical therapy from January to July 2008. (Tr. at 162-71.) The stated reason for discharge from physical therapy was that most long term goals had been met. (Tr. at 162.) Plaintiff's right wrist range of motion was within normal limits, his strength was 5/5, and his grip strength was 85 and 103 pounds. (*Id.*)

On January 22, 2009, Plaintiff was evaluated by Michael Rice, M.D., of the Gastroenterology Clinic at Brighton Health Center for his "new onset of reflux symptoms, rectal bleeding, and alternating diarrhea and constipation." (Tr. at 173, 197, 200.) Dr. Rice recommended further testing, such as a colonoscopy and an endoscopy. (Tr. at 173-74, 198-99, 201-02.)

Plaintiff underwent a colonoscopy on March 4, 2009, and "[f]ive benign appearing diminutive polyps in the rectum" were found and the ileum was normal. (Tr. at 175, 195-96.) An endoscopy was also performed that day and it revealed a normal esophagus, normal stomach, and "[e]rythematous duodenopathy." (Tr. at 177.) Pathology reported that the biopsies taken from the duodenum, colon, and ileum showed "[n]o significant abnormalities" but the colon revealed "[h]yperplastic polyps." (Tr. at 191-92.)

On March 26, 2009, Dr. Rice examined Plaintiff and indicated that Plaintiff reported "he has been doing fairly well" on Prilosec for his reflux symptoms but "continues to have alternating diarrhea and constipation." (Tr. at 179, 205, 208.)

On March 26, 2009, Martin E. Garber, D.O. examined Plaintiff and found "no active joint synovitis to his hands, wrists or elbows" and that "[r]ight shoulder has obvious crepitus but full range of motion [with] no joint effusion" and "[t]here is no synovitis noted to his knees or ankles."

8

(Tr. at 185, 203.) Dr. Garber concluded that Plaintiff's rheumatoid arthritis was "well-controlled." (*Id.*)

On May 25, 2009, Plaintiff sought treatment in the emergency room based on bloody stools. (Tr. at 182.) Plaintiff was provided with a stool softener and discharged. (Tr. at 183, 211.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed on December 9, 2009, by Brandie Selbig, a Single Decisionmaker ("SDM"). (Tr. at 213-20.) The assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was limited in his ability to push or pull with his upper extremities. (Tr. at 214.) Plaintiff was found to be limited in reaching in all directions, handling, and fingering. (Tr. at 215.) There were no postural, visual, communicative or environmental limitations established. (Tr. at 215-17.)

An ultrasound of Plaintiff's hand on December 22, 2010, was "normal without any evidence of inflammatory arthritis." (Tr. at 226.)

An MRI of Plaintiff's right shoulder taken on February 1, 2011, showed "[s]upraspinatus tendinosis with bursal surface fraying of the supraspinatus tendon and overlaying bursal thickening" and "Type III acromion which is also downsloping, resulting in a narrowed subacromial space." (Tr. at 225.)

In his Daily Function Report, Plaintiff indicated that he cleans up around the house for two hours every day, spends time on the computer, records television shows for his wife, helps his son with his homework, makes lunch, sometimes makes dinner for his wife and son which takes one or two hours, runs occasional errands, attends church regularly, does laundry every other weekend, has no problems with personal care, does household repairs, drives a car and shops in stores for

9

groceries, clothes and household goods, handles finances, and socializes with family and friends. (Tr. at 141-45.)

At the administrative hearing, Plaintiff testified that he has three minor children, ages seventeen, fifteen, and seven years old at the time of the hearing. (Tr. at 36.) Plaintiff further testified that, due to carpal tunnel syndrome and shoulder impingement, he left work on sick leave, and returned to work with the following restrictions: "limited forceful gripping and grasping with the right hand, and limited forceful gripping and grasping with the left. hand. No lifting over 5 pounds, and no lifting at or above shoulder level." (Tr. at 44.) Plaintiff stated that these are the same restrictions that he was under at the time of the hearing. (*Id.*) Plaintiff indicated that he needs some help with personal hygiene but that since his shoulder surgery, he is able to do housework. (Tr. at 45.)

Plaintiff testified that he underwent a carpal tunnel release on his right side in May of 2008. (*Id.*) Plaintiff also testified that it was his shoulder which caused him to stop working in 2008. (*Id.*)

The ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background who was able, at a maximum, to "lift 5 pounds repetitively, able to stand and/or walk at least six hours out of an eight hour day, and able to sit at least six hours out of an eight hour day. In order to perform work the work should be done [] at or not above, at or below shoulder level." (Tr. at 47-48.) The ALJ also added a "requirement for no forceful gripping and grasping." (Tr. at 48.) The VE responded that such a person could not return to Plaintiff's past relevant work. (*Id.*) The VE further testified that such a person could perform the 4,100 security guard in the light, unskilled category and the 1,500 security monitor or surveillance system monitor, 2,200 information clerk, 1,600 assembler, 1,000 visual inspector, and 2,400 sorter or packager jobs in the sedentary,

unskilled category available in the lower peninsula of the State of Michigan. (Tr. at 48-49.) The VE indicated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 49.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 22-25.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred as a matter of law in assessing Ryan Bear's credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray Ryan Bear's impairments." (Doc. 12 at 6-16.)

In the instant case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 24.) I suggest that substantial evidence supports the ALJ's credibility finding and resulting RFC analysis and that these findings are sufficiently intertwined as to render consideration of them together most efficient.

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999

WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

13

    (i)      [D]aily activities;

    (ii)     The location, duration, frequency, and intensity of . . . pain;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)     Treatment, other than medication, . . . received for relief of . . . pain;

    (vi)    Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 23-25.) I suggest that substantial evidence supports the ALJ's finding that "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" and also supports the ALJ's RFC findings. (Tr. at 24.)

Plaintiff's carpal tunnel release surgery resulted in "improved strength in his right hand" and Dr. Schueller stated that "we will return him back to work with minimum repetitive use" and "will also try to minimize his overhead work for his shoulders as well, otherwise, no restrictions." (*Id.*)  Physical therapy was also successful with most long term goals met and strength largely restored. (Tr. at 162.)  Although Plaintiff had gastroenterological symptoms, polyps in his rectum were found to be benign (Tr. at 175, 191-92,) and his espophagus and stomach were found to be normal. (Tr. at 177.) As of March 26, 2009, Plaintiff reported "he has been doing fairly well" on Prilosec for his reflux symptoms. (Tr. at 179, 205, 208.)  On March 26, 2009, Martin E. Garber, D.O. examined Plaintiff and found "no active joint synovitis to his hands, wrists or elbows" and

that "[r]ight shoulder has obvious crepitus but full range of motion [with] no joint effusion" and "[t]here is no synovitis noted to his knees or ankles." (Tr. at 185, 203.) Dr. Garber concluded that Plaintiff's rheumatoid arthritis was "well-controlled." (*Id.*) An ultrasound of Plaintiff's hand on December 22, 2010, was "normal without any evidence of inflammatory arthritis." (Tr. at 226.) An MRI of Plaintiff's right shoulder taken on February 1, 2011, showed "[s]upraspinatus tendinosis[.]" (Tr. at 225.) I suggest that the ALJ properly found that Plaintiff has several severe impairments but that none of them alone or in combination could reasonably cause disabling symptoms.

I also note that Plaintiff's treatment for his physical impairments was modest, consisting of prescription medication only. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

I further suggest that the credibility findings and RFC analysis are supported by Plaintiff's own statements that he cleans up around the house for two hours every day, spends time on the computer, records television shows for his wife, helps his son with his homework, makes lunch, sometimes makes dinner for his wife and son which takes one or two hours, runs occasional errands, attends church regularly, does laundry every other weekend, has no problems with personal care, does household repairs, drives a car and shops in stores for groceries, clothes and household goods, handles finances, and socializes with family and friends. (Tr. at 141-45.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

I also suggest that the ALJ's RFC analysis properly incorporated the limitations delineated in the RFC Assessment (Tr. at 214-17) and added further limitations based on Plaintiff's testimony

regarding his doctor's assessment, e.g, that Plaintiff could only lift 5 pounds repetitively and could not do any forceful grasping or gripping. (Tr. at 44, 47-48.)

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                 s/ *Charles E Binder*  
                                                CHARLES E. BINDER  
Dated: August 26, 2013                  United States Magistrate Judge

## **CERTIFICATION**

       I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  August 26, 2013                 By      s/Patricia T. Morris  
                                                        Law Clerk to Magistrate Judge Binder